The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties:
 STIPULATIONS *Page 2 
1. At all relevant times, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. At all relevant times, an employer-employee relationship existed between plaintiff and defendant-employer.
3. At all relevant times, defendant-employer was insured for injuries sustained under the Workers' Compensation Act by defendant-carrier, The Hartford Insurance Company.
4. On April 16, 1993, plaintiff sustained a compensable injury by accident to the low back arising out of and in the course of her employment with defendant-employer. Defendants accepted this injury on a Form 21 Agreement for Payment of Compensation.
5. The following exhibits were stipulated into evidence:
 a. Stipulated Exhibit #1: Records submitted and marked that parties agree are relevant to determination of issues at bar, as the medical records in prior hearings on this claim include over 3,000 pages.
 b. Stipulated Exhibit #2: Plaintiff's original Motion to Show Cause and accompanying exhibits.
 c. Stipulated Exhibit #3: Defendants' response to plaintiff's Motion to Show Cause and accompanying exhibits.
 d. Stipulated Exhibit #4: Nursing notes from the assisted living community where plaintiff resides, Legacy Heights.
 *********** ISSUES *Page 3 
1. Whether plaintiff's falls resulted in a material aggravation and acceleration of her preexisting bilateral knee osteoarthritis such that treatment for that condition is compensable, including right knee replacement.
2. Whether defendants' defense of this case has been unfounded and stubborn litigiousness.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 61 years old. Plaintiff sustained a compensable injury by accident to her back on April 16, 1993. As the result of the injury and surgery, plaintiff has an L-5 deficiency that causes foot drop and frequent falls. Plaintiff is permanently and totally disabled as a result of the injury by accident.
2. The law of this case includes: Opinions and Awards by the Full Commission filed October 4, 1999, February 6, 2002, October 18, 2004, and February 15, 2005, and decisions by the North Carolina Court of Appeals, Clark v. SangerClinic, P.A., 142 N.C. App. 350, 542 S.E.2d 668 (2001) andClark v. Sanger Clinic,175 N.C. App. 76, 623 S.E.2d 293 (2005). The Court of Appeals has also filed two unpublished decisions in this matter which are found at 157 N.C. App. 572, 579 S.E.2d 520 (2003) and175 N.C. App. 793, 623 S.E.2d 293 (2005).
3. The Full Commission has addressed multiple issues related to this case over the past 11 years. In the October 4, 1999 Full Commission decision, the Full Commission found and concluded that plaintiff's compensable back injury caused or substantially contributed to her *Page 4 
excessive falls. The Full Commission held that a right knee injury resulting from plaintiff's falls was compensable.
4. Therefore, pursuant to the 1999 Opinion and Award, which was affirmed by the Court of Appeals, it is defendants' burden to prove that any falls sustained by plaintiff are not causally related to the compensable injury by accident.
5. The Full Commission in the October 18, 2004 decision held that plaintiff's bilateral knee arthroscopies were deemed compensable because the injuries to the knees were caused by falls. In that same decision, the Full Commission further found that plaintiff might need bilateral knee/joint replacements in the future because of the severe arthritic condition in both knees. The Full Commission held that plaintiff's degenerative osteoarthritis, as it existed at that time, was not related to her compensable falls and that plaintiff's potential need for knee replacement surgery was due to her underlying degenerative condition.
6. In the February 15, 2005 decision, the Full Commission held that plaintiff's preexisting degenerative hip condition was materially aggravated by her falls, to the point that the need for hip replacement surgery was accelerated; therefore, the hip replacement was part of the compensable injury.
7. The issue now before the Full Commission is whether plaintiff's current need for right knee replacement surgery and treatment for the left knee are causally related to falls in 2007 or the result of her preexisting osteoarthritis.
8. After plaintiff's bilateral knee arthroscopies in 1998, her surgeon, Dr. James Yates, indicated that she would "eventually" need knee replacement. Dr. Ronald Singer on November 15, 1999, indicated that knee replacements "could be imminent." Plaintiff continued to be mobile during this period without the regular use of assistive devices and remained *Page 5 
independent in her own home. In 2005 when plaintiff was well enough to undergo major surgery, she chose to have hip replacement surgery, in lieu of knee replacement surgery. In 2006, plaintiff fell again and broke her wrist. After this fall, in January 2007, plaintiff moved to Legacy Heights, a retirement home in Charlotte.
9. In February and May 2007, plaintiff experienced falls during which she landed directly on her knees and which caused her significantly increased knee pain. Plaintiff reported these injuries to Dr. T. Kern Carlton, her authorized treating physician and pain management doctor. Dr. Carlton ordered x-rays and then MRIs. The diagnostic tests showed degenerative osteoarthritis and additional meniscal tears. Plaintiff then saw Dr. David Homesley, a board certified orthopedist, specifically to discuss knee replacement surgery. For the first time, plaintiff obtained a date for this surgery, but was unable to undergo the surgery due to unrelated health issues.
10. Plaintiff has had longstanding bilateral knee pain, some of it ruled part of the compensable injury, some of it not. Throughout the course of plaintiff's compensable claim, she has periodically complained about knee pain, as well as popping, clicking, and locking in her knees. However, plaintiff testified that she experienced a significant increase in knee pain after her falls in early 2007 and her testimony is deemed credible. Dr. Carlton, who has treated plaintiff since 1994, also indicated that plaintiff suffered increased pain. Dr. Carlton has treated plaintiff for many years, and, therefore, his observations about plaintiff's pain levels are given additional weight.
11. Both Dr. Carlton and Dr. Homesley indicated, and the Full Commission finds, that the primary decisive factor in whether knee replacement is indicated is the patient's subjective complaints of pain. No matter how bad the diagnostic films look, a knee replacement *Page 6 
is not indicated if the pain symptoms are not sufficient to warrant surgery. Conversely, severe pain symptoms may indicate a need for knee replacement, even if the diagnostic films might not be signficant. Plaintiff's falls in 2007 resulted in a material aggravation of her pain symptoms and resulted in her seeking knee replacement surgery.
12. Most often plaintiff feels her right leg "go out" from under her without warning, which then results in her falling. As a result, her falls are most often onto her right side. Plaintiff has had hundreds of falls over the 16 years since her injury. Plaintiff testified that she does not know why she falls because the falls happen so fast or "spontaneously." Dr. Homesley stated that plaintiff's leg gives way due to pain and he was unable to state whether the pain is as a result of the osteoarthritis or from her back condition. According to Dr. Homesley, plaintiff was able to tolerate the knee pain for six years, but after the falls the pain became intolerable and caused plaintiff to seek knee replacement surgery.
13. Dr. Carlton testified as follows in response to defense counsel's question whether plaintiff is falling because of the osteoarthritis in her knees:
 I don't think I know the answer to that for sure. . . .Her weight contributes to it, probably some balance issues. So it's probably multifactorial. I mean there is pain and arthritis in the knees. If you have nerve damage, you're going to have some weakness there. . . . But my understanding has been and I think from the beginning it was thought that it was more related to nerve damage from the back.
14. Defendants have failed to rebut the presumption that plaintiff's falls are compensable. Both Dr. Carlton and Dr. Homesley agreed, and the Full Commission finds, that the falls in 2007 have caused or substantially contributed to an increase in plaintiff's bilateral knee pain and resulted in a material aggravation of plaintiff's preexisting degenerative disease of the knees. Any need for right knee replacement and left knee treatment or replacement that she *Page 7 
otherwise might have had, but for the falls, has been accelerated by these compensable falls and the pain they have caused.
15. The Full Commission finds based upon the greater weight of the competent medical evidence that plaintiff's need for right knee replacement surgery is causally related to her compensable injury.
16. Defendants reasonably based their denial on prior Full Commission and Court of Appeals decisions in this matter and have reasonably defended the issues presented in this claim.
17. This matter was appealed to the Full Commission by defendants from an Opinion and Award awarding benefits and results in an affirmation of that award.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Since November 17, 1995, plaintiff has remained permanently totally disabled within the meaning of the Workers' Compensation Act as the result of her April 16, 1993, admittedly compensable injury by accident. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to continue to receive weekly compensation at the maximum compensation rate for 1993 of $442.00 and to receive related medical compensation continuing for the remainder of her life. N.C. Gen. Stat. § 97-29.
3. Our courts have long approved causal connections between an initial injury and its direct and natural consequences and have held that injured workers are entitled to be compensated for all disability caused by and resulting from a compensable injury.Horne v. Universal Leaf Tobacco Processors,119 N.C. App. 682, 459 S.E.2d 797, disc. rev. denied, *Page 8 342 N.C. 192, 403 S.E.2d 237 (1995); Heatherly v. MontgomeryComponents, Inc., 71 N.C. App. 377, 323 S.E.2d 29 (1984),disc. rev. denied, 313 N.C. 329, 327 S.E.2d 890 (1985).
4. In the case at bar defendants failed to produce sufficient evidence that plaintiff's falls were not directly related to the compensable injury. Plaintiff has shown that the falls and related problems were the direct and natural consequence of the compensable injury by accident. Heatherly v. Montgomery Components, Inc.,supra. Plaintiff's compensable falls have resulted in a material aggravation and acceleration of her preexisting bilateral knee osteoarthritis such that treatment for her knees, including right knee replacement, is compensable and shall be provided by defendants. N.C. Gen. Stat. §§ 97-2(19), 97-25; Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983),disc. rev. denied, 310 N.C. 309, 312 S.E.2d 652 (1984).
5. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of the compensable knee treatment, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
7. Plaintiff is entitled to payment by defendants for the attorney's fees associated with the appeal to the Full Commission pursuant to N.C. Gen Stat. § 97-88.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD *Page 9 
1. Defendants shall continue to pay plaintiff permanent total disability compensation at the weekly rate of $442.00, subject to the attorney's fee approved in the initial Opinion and Award.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury. The approved medical expenses include treatment for both knees, including right knee replacement and all treatment performed by or recommended by Dr. David Homesley or Dr. T. Kern Carlton as the result of her falls, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. Plaintiff's counsel shall submit an affidavit or itemized statement in support of an award of reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88 within 10 days of the filing of this Opinion and Award for the time expended preparing and litigating this appeal. Upon receipt of the affidavit, the Full Commission shall issue an order directing defendants to pay an additional attorney's fee directly to plaintiff's counsel.
4. Defendants shall pay the costs due this Commission.
This 19th day of August, 2010.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1